**ROBERT E. FAUST AGENCY, INC., Petitioner,**

v.

**PENNSYLVANIA INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1999.
Decided May 10, 1999.
Publication Ordered July 15, 1999.

Patricia Carey Zucker, Harrisburg, for petitioner.

Terrance A. Keating, Harrisburg, for respondent.

Susan Hileman Malone, Pittsburgh, for intervenor, Erie Insurance Group.

Before McGINLEY, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Robert E. Faust Agency, Inc. (the Faust Agency) petitions for review from a decision of the Pennsylvania Insurance Department (Department), finding that the termination of the Faust Agency by Erie Insurance Group (Erie)[1] complied with the Act of September 22, 1978, P.L. 763, *as amended,* 40 P.S. §§ 241–246 (hereafter referred to as Act 143).[2] We affirm.

On May 17, 1995, the Faust Agency was notified in writing that it was being placed on a rehabilitation program pursuant to Act 143. At a meeting that same day, representatives for Erie presented the Faust Agency with a rehabilitation agreement and provided the head of the Faust Agency with an opportunity to review the agreement on his own. This opportunity for further review of the agreement was declined by the head of the Faust Agency. During the course of this meeting, Erie explained to the Faust Agency that the goal of the rehabilitation program was an unadjusted loss ratio[3] of 68% or lower, and the failure of the Faust Agency to meet this goal would result in the termination of the agency agreement between Erie and the Faust Agency.

The agreement provided that no restrictions were to be placed on the type of business that the Faust Agency could submit during rehabilitation. The agreement further provided that the Erie district sales manager would assist the Faust Agency in attaining a loss ratio below 68%. Additionally, it was agreed that the Erie district sales manager would meet with the Faust Agency on a monthly basis, discuss the programs enumerated in the rehabilitation agreement and assist with the implementation thereof.[4] Thereafter, the

1. By way of explanation, we note that Erie had an agency agreement with the Faust Agency for the sale of Erie products and services.

2. Act 143 governs the termination of certain agency contracts in effect for more than four years. Act 143 requires ninety-days prior notice of the termination by the insurer; requires that terminations due to adverse experience be based on at least two successive years of adverse experience prior to the notice of termination; restricts termination based upon adverse experience, mix of business and lack of premium volume by imposing on the insurer an obligation to make a reasonable attempt to rehabilitate the agent prior to termination. Act 143 further provides for the continuation of business and payment of commissions following the contract termination.

3. A loss ratio provides the measure of profitability of a book of insurance business. That ratio is expressed as a percentage figure that is calculated by dividing the losses incurred by the premium dollars earned. (Brief of the Department at 2).

4. The following seven areas of concentration were enumerated in the rehabilitation agreement: the use of data sharing in reunderwriting, cross selling, and developing life prospects; developing and implementing plans to increase premiums through commercial and personal new business production; developing and implementing appropriate office pro-

934

head of the Faust Agency signed the rehabilitation agreement.

On July 1, 1995, the rehabilitation program commenced. The program concluded on June 30, 1996. At the conclusion of the rehabilitation agreement, the Faust Agency had a loss ratio of 92.46%. Thereafter, at a meeting with an Erie branch manager, the Faust Agency was informed that it had failed to meet the rehabilitation goal and, as a result, the agency agreement between the Faust Agency and Erie would be terminated. As an alternative to the termination of the agency agreement, Erie gave the Faust Agency the option to sell the business. The Faust Agency agreed to sell the business and, as a result, the termination was postponed so as to allow the Faust Agency time to secure a buyer.

On April 24, 1997, after the Faust Agency failed to secure a buyer, and almost one year after the conclusion of the rehabilitation program, a letter of termination was sent to the Faust Agency. Termination was based on the Faust Agency's failure to meet the rehabilitation goal of a 68% loss ratio.[5] The Faust Agency appealed the aforementioned termination to the Department. The Department determined that the termination was justified under Act 143. The instant appeal resulted.

■ On appeal to this Court,[6] the Faust Agency asserts that the rehabilitation goal under Act 143 was unreasonable. Specifically, the Faust Agency contends that the goal imposed upon it was unreasonable because most agencies in its underwriting territory did not achieve a loss ratio of 68% or better during the rehabilitation period during which it was required to achieve such a ratio.

■ This assertion is without merit. The law is well-settled that evaluating an insurer's compliance with Act 143 requires a two-step analysis: (1) whether the rehabilitation plan established by the insurer was reasonable; and (2) whether the insurer made a reasonable attempt to assist the agent with the meeting of the rehabilitation plan. *Ohio Casualty Insurance Co. v. Pennsylvania Insurance Department,* 159 Pa.Cmwlth. 148, 632 A.2d 1022 (1993).

■ In the instant case, the record is replete with evidence that not only was the rehabilitation goal reasonable, but Erie also made a reasonable attempt to assist the Faust Agency with meeting the goal. The record shows that the head of the Faust Agency himself, at the time of the signing of the rehabilitation agreement, stated that a 68% loss ratio was not only reasonable but also attainable. Furthermore, the record shows that the rehabilitation goal was reasonable for the territory in which the Faust Agency was located, as all twenty-two agencies in the district had achieved a 68% loss ratio at some point during the six years prior to the termination of the agency agreement between the Faust Agency and Erie.

■ Additionally, the record is replete with evidence that Erie provided extensive assistance to the Faust Agency in meeting its rehabilitation goal. The district manager for Erie met monthly for a period of one year with the Faust Agency to offer

cedures; reviewing enumerated reports and developing other requested reports and information to assist in rehabilitation efforts; providing marketing and sales materials and demographics analysis to assist in rehabilitation efforts; providing personal support to further the plans for a return to profitability; and utilizing the resources of the branch office, as well as those of Erie, to facilitate rehabilitation efforts. (R.R. at 594a–595a).

5. We note that the record shows that prior to the termination of the agency agreement between the Faust Agency and Erie on April 24, 1997, the Faust Agency had been associated with Erie for over twenty years, but had been unprofitable for many years. (R.R. at 27a).

6. Our scope of review of an order of the Department is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or the findings of fact are supported by substantial evidence. *Standard Fire Insurance Company v. Pennsylvania Insurance Department,* 148 Pa.Cmwlth. 350, 611 A.2d 356 (1992).

guidance, suggestions and help with the implementation of plans aimed at increasing its profitability. These monthly meetings lasted anywhere from two to four hours each. Additionally, Erie provided assistance to the Faust Agency in an effort to improve their business in numerous areas and provided leads on potential accounts. Thus, we cannot say that the rehabilitation goal imposed on the Faust Agency was unreasonable under Act 143.

■ The Faust Agency next argues that an Act 143 rehabilitation plan which promotes the sale of life insurance to meet the loss ratio goal is unreasonable. Specifically, the Faust Agency asserts that Erie's plan for them to sell life insurance had no reasonable relationship to their meeting of the rehabilitation goal.

We do not agree. The record reveals that the rehabilitation plan established by Erie, already determined by this Court to have been reasonable, included the sale of life insurance as only a *minimal* component of the plan. The record shows that the rehabilitation plan's primary focus was on improving the property insurance and casualty insurance revenues of the Faust Agency. Thus, the Faust Agency's argument regarding the sale of life insurance as unreasonable is without impact on the reasonableness of the rehabilitation plan as a whole.

Accordingly, the decision of the Department is affirmed.

### ORDER

AND NOW, this 10 th day of May, 1999, it is hereby ordered that the decision of the Pennsylvania Insurance Department is AFFIRMED.